UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 10-CV-1627 (JFB)
_____

CENTRAL ISLIP PLUMBING SUPPLY, INC.,

Appellant,

VERSUS

WILLIAM E. DOOLEY,

Appellee.

_____

**MEMORANDUM AND ORDER**
March 30, 2011
_____

JOSEPH F. BIANCO, District Judge:

The instant case is an appeal by Central Plumbing Supply, Inc. ("CI Plumbing" or "Appellant"), a creditor, from the December 31, 2009 judgment of the Honorable Alan S. Trust, United States Bankruptcy Judge, discharging all of the debt of debtor William E. Dooley ("Dooley" or "Appellee"), who voluntarily filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court"). CI Plumbing appeals from the judgment of the Bankruptcy Court, arguing that: (1) Dooley's debt to CI Plumbing is non-dischargeable because Dooley violated the provisions set forth in 11 U.S.C. § 523(a)(4) ("Section 523(a)(4)") by committing acts of defalcation; or, in the alternative that (2) Dooley's debt to CI Plumbing incurred after they signed a loan workout agreement was non-dischargeable because Dooley violated Section 523(a)(4) by committing acts of embezzlement.

As set forth below, the Court upholds the Bankruptcy Court's finding that Appellee's debt is dischargeable. The Bankruptcy Court did not err in concluding that Appellee kept and maintained per-project records as required under New York Lien law, and lacked the requisite intent to demonstrate defalcation. Nor did the

Bankruptcy Court err in finding that Appellant failed to demonstrate how funds allegedly misappropriated by Appellee rightfully belonged to Appellant, thereby failing to demonstrate acts of defalcation or embezzlement on this basis.

I. BACKGROUND

A. Facts

The Appellee "does not dispute the Appellant's statement of the facts of the case." (Appellee's Opp. at 2.) As a result, the Court summarizes the facts relevant to the instant appeal as stated in Appellant's brief and, where possible, as set forth in the Bankruptcy Court's oral post-trial bench ruling at the conclusion of trial.

Dooley was the owner of Dooley Plumbing, a corporation that provided plumbing and heating services. (Appellant's Mem. of Law at 2.) Dooley Plumbing was incorporated in the State of New York in 1996 and ceased its operations in 2008. (*Id.* at 2, 4.) Dooley Plumbing ordered heating and plumbing supplies on behalf of clients from vendors, including CI Plumbing. (*Id.* at 3.) CI Plumbing sent Dooley Plumbing monthly bills and when the outstanding balance due on those bills reached $120,000, CI Plumbing entered into a workout arrangement on the past-due debt. (*Id.*) This agreement was concluded on July 1, 2005. (Hearing Tr.[1] at 10.) Dooley provided a personal guarantee of all debts incurred by Dooley Plumbing to CI Plumbing as part of the agreement. (Appellant's Mem. of Law at 3.) Pursuant to the workout arrangement, Dooley Plumbing and Dooley agreed to pay CI Plumbing $859.72 per month on previously owed amounts. (Hearing Tr. at 11.) Between July of 2005 and 2007, Appellee reduced the debt owed to CI Plumbing by approximately $20,000. (*Id.*) However, CI Plumbing continued to provide supplies to Dooley Plumbing at the same time, so that at the time Dooley filed for bankruptcy, Dooley Plumbing owed CI Plumbing $152,838.02. (*Id.*)

The bookkeeping for Dooley Plumbing was performed by Dooley's ex-wife and, after Dooley's divorce, by Madeline Stewart ("Stewart"), Dooley's girlfriend. (Appellant's Mem. of Law at 2.) The bookkeeper prepared all payment checks to vendors and Dooley signed off on them once his ex-wife, who was the only other signatory on the corporate accounts, left the company. (*Id.* at 2-3.) At trial, Dooley testified that he was "really not sure how the bookkeeping was done" but thought that the content of any files was not "extravagant" in detail. (*Id.* at 9.) Stewart testified through a sworn trial affidavit that while Dooley Plumbing's electronic bookkeeping system "was incapable of determining whether a specific vendor was paid upon payment by a customer. . . . individual project folders were maintained. The per-project folders were maintained in the top drawer of the file cabinet on the left side of the only desk in the Dooley Plumbing office." (*Id.* at 9.) Stewart described the detailed documentation of transactions kept in each project folder as including:

---

[1] "Hearing Tr." refers to the transcript of the oral bench ruling, after trial, by the Bankruptcy Court discharging the Appellee's debt.

2

the invoices from supply vendors per project and payment checks; . . . the Quickbook invoice bill to each of Dooley Plumbing's customers on a per-project basis; . . . the check(s) from the Dooley Plumbing customer relating to that project and the bank deposit slips for that check; . . . the written proposal that Dooley Plumbing provided the customer before the customer permitted Dooley Plumbing to begin work on the project; and . . . other miscellaneous per project documents such as literature comparing different equipment and supplies for each project.

(*Id.*)

Dooley failed to provide per project records as part of discovery. (*Id.* at 7-8.) He indicated that "unfortunately I can not break down CI materials per job since none of the delivery receipts I have from CI are marked with a job name. I have seperated [sic] the jobs with deliverys [sic] during that time frame of specific jobs." (*Id.* at 7-8.) Dooley also testified at trial about the various steps he took to comply with CI Plumbing's request for the per-project files, stating that he had "a friend try to decipher what [Appellant] needed out of all the – paperwork because it was a mess and they tried to put things in order and produce what you wanted. As far as – and [CI Plumbing] invoices, it's very possible I was shut down by [CI Plumbing] at that time and wasn't able to get material from [CI Plumbing's president]. . . . perhaps that's why there's not many invoices" for CI Plumbing projects that were produced. (*Id.* at 12.) Dooley Plumbing did not maintain separate bank accounts for each of its projects; rather, Dooley held all of the money received on each project under a single bank account. (*Id.* at 8.)

Evidence was presented at trial that Dooley used company funds for personal expenses despite being aware of his obligations to CI Plumbing. For example, Dooley made payments on a Corvette with company funds while knowing he owed money to CI Plumbing. (*Id.* at 14.) Dooley also used corporate funds to repay "an individual" loan to his sister in the amount of $18,500 (after declaring bankruptcy), and to cover gas and other "miscellaneous personal expenses." (*Id.* 13-14.) Finally, Stewart testified that despite knowing of Dooley Plumbing's dire financial situation, Dooley

> refused to alter his high life-style . . . When I suggested cutting back expenditures, both business and individual, and for him to stop using the moneys of Dooley Plumbing for his own personal use, Mr. Dooley became belligerent. . . . Specifically, while Mr. Dooley decided not to pay certain vendors, such as [CI Plumbing], he continued to: (a) take his normal salary, (b) use other funds of Dooley Plumbing like his own personal bank, (c) pay family members their salaries even though they were often not working and were unreliable; and (d) use of his and/or Dooley Plumbing's credit cards for lavish dinners and entertainment, as if he was flush with

3

moneys and paying all of the business and personal debts as they became due and owing.

(*Id*. at 26-27.)

### B. Bankruptcy Proceedings

After trial on October 30, 2009, the Bankruptcy Court issued an oral ruling on the record on December 22, 2009, followed by a written judgment dated December 31, 2009. The Bankruptcy Court held that: (1) "as president and control person of Dooley Plumbing [Dooley] was a fiduciary to" CI Plumbing "for purposes of New York lien law governing collection of trust funds, payment of trust funds, and maintenance of books and records[,]" (Hearing Tr. at 5); (2) CI Plumbing "did not meet its burden of proof" with respect to whether Dooley "personally either consciously or with reckless disregard either failed to maintain proper records as required by the New York lien law or that he acted with a wrongful intention to convert trust funds to his own use[,]" (*id*. at 9); and (3) CI Plumbing failed to meet its burden of proof to demonstrate that "the debtor [Dooley] breached his fiduciary duties by converting or embezzling any trust funds for his own personal benefit." (*Id*. at 10.) The Bankruptcy Court explained that CI Plumbing "did not meet its burden of proof that per-project records were not properly maintained" by Dooley because Stewart "was clear that these individual per-project files maintained the invoices from the Dooley Plumbing supplier, the invoice to the Dooley Plumbing customer, any checks received on the project for Dooley Plumbing's work, the written proposal from Dooley Plumbing to its customer, as well as any other miscellaneous documents." (*Id*. at 10.) Further, CI Plumbing "failed to trace any dollars that were collected from . . . work [with CI Plumbing supplies] by Dooley Plumbing and misappropriated by Mr. Dooley for his own personal use and benefit." (*Id*. at 11.) "[A]ny funds that were used by Mr. Dooley for his own personal benefit could have been drawn out of Dooley Plumbing based - - for credit cards of the corporations, could have been based upon Mr. Dooley's personal credit cards, or could have come from funds borrowed by North Fork Bank, but it is not for the Court to speculate as to what any source of funds were that Mr. Dooley used for his own personal benefit if they were taken from Dooley Plumbing." (*Id*. at 12.) The Bankruptcy Court entered judgment on December 31, 2009, discharging all of Appellee's debt.

Appellant appealed the Bankruptcy Court's decision. On February 22, 2010, the Bankruptcy Court denied CI Plumbing's motion to alter or amend judgment, concluding that CI Plumbing presented no new evidence that would cause the court to alter its decision and that

> [t]he record is clear that [CI Plumbing] never sought to compel production of [records on a per-project basis] from [Dooley Plumbing] prior to trial. Further, [CI Plumbing] failed to bring any motion prior to trial regarding its allegation of spoliation of evidence. Instead, in the midst of trial, [CI Plumbing] complained that evidence had never been turned over to it and, therefore, in spite of testimony of Ms. Stewart,

4

this Court should draw an inference or conclusively presume that [Dooley's] former corporation had failed to maintain the proper records. It is simply improper and prejudicial for [CI Plumbing] to have asserted such a claim during or after trial. The proper procedure would have been for [CI Plumbing] to have made these records the subject of a proper pretrial discovery request.

(Order Den. Mot. to Alter or Amend J. at 4.)

C. Procedural History of the Instant Action

On April 13, 2010, Appellant filed a Notice of Appeal of the Bankruptcy Court's judgment. On the same day, the Notice of Docketing of Bankruptcy Appeal was filed. Appellant filed his brief on April 26, 2010. Appellee filed its brief on July 7, 2010. Appellant filed a reply on July 14, 2010. The Court has fully considered all submissions and arguments of the parties.

II. STANDARD OF REVIEW

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a reviewing court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may "remand with instructions for further proceedings." *See* Fed. R. Bank. P. 8013.

The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007); *see also Lubow Mach. Co. v. Bayshore Wire Prods. Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, . . . its conclusions of law de novo, . . . its decision to award costs, attorney's fees, and damages for abuse of discretion."); *accord Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs)*, 922 F.2d 984, 988-89 (2d Cir. 1990). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Technologies Corp.*, 610 F.3d 44, 51 (2d Cir. 2010); *see also Collins v. Hi-Qual Roofing & Siding Materials, Inc.*, No. 02-CV-0921E(F), 02-CV-0922E(F), 2003 WL 23350125 at *4, n.16 (W.D.N.Y. Dec. 18, 2003) ("[A] finding is only clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. This standard precludes this Court from reversing the Bankruptcy Court's decision if its account of the evidence is plausible, even if this Court is convinced that it would have weighed the evidence differently.")

The Bankruptcy Court's findings of intent and knowledge are reviewed for clear error as issues of fact. *See, e.g., United States v. Trzaska*, 111 F.3d 1019, 1028 (2d Cir. 1997) (collecting cases). "Deference to the bankruptcy court's factual findings is particularly appropriate on the intent issue [b]ecause . . . [it] depends largely upon an assessment of the credibility and demeanor of the debtor." *Mitsubishi Motor Sales of*

5

*Caribbean, Inc. v. Ortiz*, 418 B.R. 11, 15 (D. Puerto Rico 2009) (quotation marks omitted) (citing *In re Burgess*, 955 F.2d 134, 137 (1st Cir. 1992)); *Pergament v. Smorto (In re Smorto)*, No. 07-CV-2727 (JFB), 2008 WL 699502, at *9 (E.D.N.Y. Mar. 12, 2008) ("A bankruptcy judge's 'intent' determination often relies heavily upon the judge's evaluation of the credibility and demeanor of the debtor.")

### III. DISCUSSION

The Court has reviewed the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*.[2] After full consideration of Appellant's claims and a thorough examination of the record below, the Court concludes that Appellant's claims are without merit and affirms the judgment of the Bankruptcy Court in its entirety.

### A. Acts of Defalcation

CI Plumbing argues that Appellee's entire debt is not dischargeable because, in violation of Section 523(a)(4) of the Bankruptcy Code, Appellee committed "defalcation while acting in a fiduciary capacity."[3] CI Plumbing makes three arguments in support of its assertion that Appellee committed defalcation. First, CI Plumbing contends that Dooley failed to keep records as required under the New York Lien law and that, as a result, "there is a statutory presumption of defalcation of the trust funds (the moneys received on each and every plumbing project)." (Appellant's Mem. of Law at 22; *see also id.* at 19.) Second, CI Plumbing argues that even if Appellee initially kept the records required by law, he nevertheless failed to maintain them consciously or with extreme recklessness as evidenced by his failure to produce any per-project records. (*Id*. at 24.) Finally, CI Plumbing argues that Dooley consciously or with extreme recklessness committed defalcation by misappropriating funds held in trust for Appellant.[4] (*Id*. at 16, 20, 27, 30-31.)

The Bankruptcy Code discharges preexisting debts in order to give "honest but unfortunate" debtors a fresh start. *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998) (quotation marks omitted).

---

[2] Even if this Court reviewed all of the Bankruptcy Court's determinations under a *de novo* standard of review, it would reach the same determination for the reasons discussed *infra*.

[3] Appellant also argues that Appellee's post-workout debt is non-dischargeable due to acts of defalcation. (*See* Appellant's Mem. of Law at 26-31.) Appellant's arguments with respect to the non-dischargeability of the post-workout debt are also made with respect to the non-dischargeability of Appellee's debt in its entirety. As a result, the Court's analysis *infra* applies to the post-workout debt as well. Thus, the Court concludes that the Bankruptcy Court did not err in concluding that Appellant failed to prove that Appellee's post-workout debt was not dischargeable based on acts of defalcation.

[4] This argument hinges upon whether or not Appellant has traced the allegedly misappropriated funds to those rightfully belonging to it—the very basis for Appellant's embezzlement claim—and is therefore addressed *infra* in Section III.B as part of the Court's analysis of Appellant's embezzlement claim.

However, the Bankruptcy Code contains numerous exceptions to the "fresh start" principle and denies relief to debts resulting from certain types of undesirable behaviors, such as fraud. "The party challenging the dischargeability of a debt bears the burden of showing that it comes within one of Section 523's exceptions to discharge, and that burden must be carried by the preponderance of the evidence." *People v. Suarez (In re Suarez)*, 367 B.R. 332, 338 (Bankr. E.D.N.Y. 2007) (quotation marks omitted) (citing *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)). Section 523(a)(4) provides, in relevant part, that:

> A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4). Defalcation "requires a showing of conscious misbehavior or extreme recklessness-a showing akin to the showing required for scienter in the securities law context." *In re Hyman*, 502 F.3d at 68 (discussing the circuit split on this issue and adopting the position of the First Circuit). Courts have concluded that "commingling, failing to account for, or misdirecting funds" may constitute defalcation. *In re Suarez*, 367 B.R. at 358 (collecting cases); *see also Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 624 (Bankr. N.D.N.Y. 2010); *Rutanen v. Baylis*, 275 B.R. 145, 150 (D. Mass. 2002) ("Most courts that have found defalcation have done so in cases where the debtor improperly fails to account for, absconds with, or commingles funds."), *overturned in part on other grounds Rutanen v. Baylis (In re Baylis)*, 313 F.3d 9 (1st Cir. 2002).

Appellee does not dispute Appellant's argument, and the Bankruptcy Court's finding, that "Dooley Plumbing and Dooley [were the] statutory trustees on behalf of CI Plumbing in accordance with the provisions of Article 3-A of the Lien Law[,]" and were therefore fiduciaries of appellant. (Appellee's Opp. at 3.) The gravamen of the dispute is whether or not Dooley committed acts of defalcation with the requisite intent. As discussed below, the Court finds that the Bankruptcy Court did not err in concluding that the Appellant had not proven that Appellee committed acts of defalcation. Moreover, the Bankruptcy Court's determination that Appellee's intent did not rise to the level of extreme recklessness or conscious misbehavior was not clearly erroneous.

This Court cannot conclude that the Bankruptcy Court's decision was without factual support or that the circumstances are such that an error was made. The Bankruptcy Court concluded that Dooley kept and maintained per-project records and therefore could not have committed acts of defalcation consciously or with extreme recklessness despite allegedly failing to produce the records to Appellant. (Hearing Tr. at 9-10.) Appellant has not pointed to any evidence in the record to support the finding that the Bankruptcy Court's determination on the issue of intent was clearly erroneous. As noted above, credibility and demeanor of the debtor are central to the determination of the debtor's intent. That assessment cannot be made by

this Court on appeal, not having heard or seen the testimony of Appellee. As this Court has previously indicated, that is why "deference is given to the original fact finder because of that court's expertise and superior position to make determinations of credibility." *In re Smorto*, 2008 WL 699502 at *9 (citing *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985) and *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 109 (1st Cir. 1987)). The Bankruptcy Court had the first-hand opportunity to weigh Stewart's testimony about the extent of per-project files that were kept against Dooley's own testimony about record-keeping. The Bankruptcy Court was in the best position to weigh Dooley's testimony that he attempted to comply with Appellant's discovery requests though Dooley Plumbing's paperwork "was a mess" (Appellant's Mem. of Law at 12), after the company shut down operations and Dooley moved files to his home. *See, e.g., White's Lumber Inc. v. Barksdale (In re Barksdale)*, 438 B.R. 25, 31, 38 (Bankr. N.D.N.Y. 2010) (while debtor did not segregate company funds into per-project accounts and used company funds to cover personal expenses, the Bankruptcy Court concluded that creditor "did not make the requisite showing of conscious misbehavior or extreme recklessness" where debtor made attempts to repay the creditor (quotation marks omitted)). After a careful review of the record, this Court concludes that the Bankruptcy Court did not err in finding that the Appellee lacked the requisite intent required under Section 523(a)(4) for acts of defalcation based on Dooley's failure to keep and maintain per-project records.

B. Acts of Embezzlement

Appellant asserts that debt accumulated by Appellee after a workout agreement was reached by the parties must be deemed non-dischargeable pursuant to Section 523(a)(4) for acts of embezzlement. (Appellant's Mem. of Law at at 31.)

The Bankruptcy Court did not err in concluding that Appellant failed to demonstrate that Appellee misappropriated funds rightfully belonging to Appellant. To determine the elements of embezzlement under Section 523(a)(4), courts look to the definition of embezzlement under federal common law, namely: "the fraudulent appropriation of property by a person to whom such property has been intrusted [sic], or into whose hands it has lawfully come." *In re Henderson*, 423 B.R. at 624. "To establish a claim of embezzlement under § 523(a), a creditor must show that: (1) property owned by another is rightfully in the possession of debtor; (2) debtor's appropriation of such property to a use other than the use for which the property was entrusted to debtor; and (3) circumstances indicating fraudulent intent. Absent intent to defraud, a debtor's appropriation of funds does not rise to the level of embezzlement." *Id*. (quotation marks and citations omitted); *see also Board of Trustees, Adirondack Carpenters Pension Fund v. Parker (In re Parker)*, 388 B.R. 11, 21 (Bankr. N.D.N.Y. 2008); *Citik Ka Wah Bank Ltd. v. Wong* (*In re Wong)*, 291 B.R. 266, 279 (Bankr. S.D.N.Y. 2003). "Where the creditor is neither the owner of nor in possession of the assets [that were allegedly embezzled], there can be no embezzlement." *Barristers Abstract Corp. v. Caulfield (In re Caulfield)*,

8

192 B.R. 808, 819 (Bankr. E.D.N.Y. 1996) (quotation marks omitted) (concluding that the creditor did not demonstrate by a preponderance of the evidence that the property allegedly embezzled by debtor was owned by or rightfully belonged to the creditor (citing *In re Kibler*, 172 B.R. 740, 742 (W.D.N.Y. 1994) and *In re Contella*, 166 B.R. 26, 30 (W.D.N.Y. 1994))).

The gravamen of the dispute on the embezzlement issue is whether or not Appellant demonstrated that the funds allegedly misappropriated by Appellee rightfully belonged to it. The Bankruptcy Court concluded that Appellant failed to meet its burden of proof on its embezzlement claim because Appellant "failed to trace any dollars that were collected from [CI Plumbing] work by Dooley Plumbing and misappropriated by Mr. Dooley for his own personal use and benefit." (Hearing Tr. at 11.) More specifically, the Bankruptcy Court noted that Appellant failed to show the actual source of the funds Appellee used for personal expenses, explaining that the funds could have been drawn from loans from North Fork Bank to Dooley Plumbing, from Dooley's personal credit cards, or from credit cards of the corporation. (*Id*. at 12.) By law, Appellee was not required to keep a separate bank account for each project. *See* New York Lien Law § 75(1). However, because Appellee commingled all of the funds he received from each project in one account, he was required to keep track of money going in and out of the trust fund on a per-project basis. *See* New York Lien Law § 75(2). As noted above, the Bankruptcy Court concluded that Appellee did keep such records. Appellant argues that the Bankruptcy Court erred in concluding that Appellant failed to trace the funds that were allegedly misappropriated by Dooley to funds owed to Appellant. CI Plumbing asserts that Appellee failed to produce documents that would allow it to make such an assessment and that the burden was on Appellee to turn over such records since, under New York Lien Law, Appellee had to keep such files. (Appellant's Reply at 8.)

The Court agrees with Appellee that CI Plumbing should have made a motion to compel or a motion for an adverse inference and sanctions to the Bankruptcy Court when the non-production of critical documents came to light in the course of discovery. Appellant is essentially asking the Court to make an adverse inference against Dooley in favor of Appellant that Dooley misappropriated funds owed to Appellant because he failed to produce documents he allegedly kept. However, the Court cannot make such a determination without knowing what was or was not produced to Appellant. Appellant never made a motion before the Bankruptcy Court to address this discovery issue until after the bankruptcy trial ended. To the extent Appellant argues that any motions for an adverse inference or to compel the production of documents would have been futile because Appellee indicated in his discovery responses (and also during trial) that he produced everything he had, that does not obviate the need for a record upon which this Court can actually make a determination of whether or not an adverse inference is warranted. The appropriate time to request that an adverse inference be made is before the Bankruptcy Court prior to trial. Clearly plaintiff was well-aware prior to the bankruptcy trial of Stewart's

affidavit in which she asserted that Dooley kept all of the per-project records and was aware of what was or was not produced by Dooley.[5]

In sum, the Bankruptcy Court did not err in concluding that Appellant failed to satisfy its burden in demonstrating that Appellee's debt should be non-dischargeable due to acts of embezzlement.

## IV. CONCLUSION

For the foregoing reasons, the Court affirms the Bankruptcy Court's December 22, 2009 oral ruling and final judgment issued on December 31, 2009. The Clerk of Court shall enter judgment and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 30, 2011
Central Islip, New York

\* \* \*

The attorney for Appellant is: Jeffrey Herzberg, Esq., Zinnker & Herzberg, LLP, 278 East Main Street, Suite C, P.O. Box 866, Smithtown, New York, 11787. The attorney for Appellee is: Richard Artura, Esq., Phillips, Weiner, Artura & Cox, 165 South Wellwood Ave., Lindenhurst, New York, 11757.

---

[5] As noted *supra* in footnote 4, Appellant has also made a defalcation argument based on the misappropriation of trust funds by Appellee. The Court's analysis of the embezzlement claim is entirely applicable to Appellant's defalcation claim based on the same alleged conduct. The Court therefore concludes that the Bankruptcy Court did not err in determining that Appellee did not commit defalcation by misappropriating trust funds belonging to Appellant. As the Bankruptcy Court explained, Appellant has failed to trace any allegedly misappropriated funds to those rightfully belonging to Appellee.